UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THORON HARRIS,<br><br>        Plaintiff,<br><br>    v.<br><br>BECKY SCOTT, et al.,<br><br>        Defendants. | Civil Action No. 24-7524 (MCA)(JBC)<br><br><br>MEMORANDUM OPINION |

Plaintiff Thoron Harris has filed a Complaint seeking relief under 42 U.S.C. § 1983 and an application to proceed *in forma pauperis* ("IFP application"). At this time, the Court grants Plaintiff's IFP application. Federal law requires the Court to screen Plaintiff's Complaint for *sua sponte* dismissal prior to service, and to dismiss any claim if that claim fails to state a claim upon which relief may be granted and/or to dismiss any defendant who is immune from suit. *See* 28 U.S.C. § 1915(e)(2)(B); *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). To survive screening, Plaintiff's Complaint must contain "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly* 550 U.S. at 557). Because Plaintiff is proceeding pro se, the Court construes his allegations liberally. *See Higgs v. Att'y Gen.*, 655 F.3d 333, 339 (3d Cir. 2011).

I.  **The Allegations in the Complaint**

According to his Complaint, Plaintiff contracted COVID-19 at HCCC during an outbreak at the jail in January 2024, and he has sued the Becky Scott, as the Warden of Hudson County Correctional Facility, the Hudson County Correctional Center (HCCC), and/or the "Hudson County Medical Department" in connection with that incident. Complaint at 11. Plaintiff alleges that when inmates were quarantined due to the COVID-19 outbreak, medical staff at HCCC used the same water jugs for administering daily medications to prisoners. *Id.* Moreover, after Plaintiff developed symptoms consistent with COVID-19, staff did not immediately test him for COVID-19. *Id.* When another inmate in Plaintiff's unit tested positive, staff placed the infected inmate in the back of the unit, and he was not immediately removed. *Id.*

After Plaintiff and several other inmates tested positive, Plaintiff was moved to a quarantine unit with "little to no medical attention." *Id.* Although medical staff provided Plaintiff with his daily medications, his requests for "anything" else were denied, and medical staff told him that his "body had to get rid of the virus." *Id.* Plaintiff was locked in a room with another inmate who was positive for COVID-19, and his room was not disinfected due to a lack of supplies. *Id.* Plaintiff was returned to his unit after eight days, even though others inmates were still testing positive. *Id.*

"Hudson County staff" allegedly suspected that the COVID-19 outbreak was caused by inmates coming from other jails who were not tested or quarantined, but they failed to take precautions to prevent the spread of the virus. *Id.* at 12. Plaintiff alleges that he was "traumatized" by this ordeal and states that he is diabetic and knew he could possibly die. *Id.* Plaintiff asks for damages in the amount of $650,000.00. *Id.*

II.     **Screening the Complaint under 28 U.S.C. § 1915(e)(2)(B)**

The Court construes Plaintiff to assert violations of his civil rights pursuant to 42 U.S.C. § 1983.  The Court does not construe Plaintiff to raise any state law claims.  To succeed on a claim under 42 U.S.C. § 1983, a plaintiff must show: (1) the conduct complained of was committed by a person acting under color of state law; and (2) the conduct deprived the plaintiff of a federally secured right.  *See, e.g., Moore v. Tartler*, 986 F. 2d 682, 685 (3d Cir. 1983); *see also Natale v. Camden Cnty. Correctional Facility*, 318 F.3d 575, 580–81 (3d Cir. 2003) (citations omitted).

In cases involving conditions of confinement, the Constitution treats pretrial detainees and convicted and sentenced prisoners differently.  *See Hubbard v. Taylor*, 399 F.3d 150, 164-65 (3d Cir. 2005) (discussing differing standards of constitutional protection over incarcerated individuals).  In his Complaint, Plaintiff indicates that he was both a pretrial detainee and a convicted prisoner at the time of the events at issue.  Available information, however, suggests that Plaintiff was a pretrial detainee and not a convicted prisoner at the time he allegedly contracted COVID-19 in January 2024.[1]

The Court first construes Plaintiff to allege that Defendants were deliberately indifferent to his health and safety and his need for medical care.  As a pretrial detainee, Plaintiff's right to adequate medical care arises under the Due Process Clause of the Fourteenth Amendment.  *See Natale*, 318 F.3d at 581, but courts analyze such claims using the same deliberate indifference standard that applies under the Eighth Amendment.  *See id.* at 581-82; *Palakovic v. Wetzel*, 854 F.3d 209, 221-23 (3d Cir. 2017).  The Eighth Amendment requires "humane conditions of confinement," including "adequate food, clothing, shelter, and medical care."  *Farmer v. Brennan*,

---

[1] The New Jersey Department of Corrections Inmate Locator indicates that plaintiff was sentenced on September 16, 2024, available at https://www-doc.state.nj.us/DOC_Inmate/details?x=1584039&n=0, last visited Feb. 27, 2025.

511 U.S. 825, 832 (1994). In addition, prison officials "must take reasonable measures to guarantee the safety of the inmates." *Id.* (internal quotation mark omitted) (quoting *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see also Duran v. Merline*, 923 F.Supp.2d 702, 719 (D.N.J. 2013) (explaining that the Constitution mandates that prison officials satisfy inmates' "basic human needs—e.g., food, clothing, shelter, medical care, and reasonable safety") (citing *Helling v. McKinney*, 509 U.S. 25, 32 (1993)). This duty extends to protecting inmates against harms including "serious contagious diseases[.]" *Helling*, 509 U.S. at 34. Thus, "[a] prison official's deliberate indifference to a substantial risk of serious harm to an inmate violates the Eighth Amendment." *Farmer*, 511 U.S. at 828 (cleaned up).

The Court also construes Plaintiff to allege that his conditions of confinement amount to punishment. *See Bell v. Wolfish*, 441 U.S. 520, 549 (1979); *Hope v. Warden York County Prison*, 972 F.3d 310, 326 (3d. Cir. 2020). "Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (internal quotations and alterations omitted). In analyzing a claim of unconstitutional punishment, courts consider the "totality of the circumstances of confinement, including any genuine privations or hardship over an extended period of time." *Hope v. Warden York Cnty. Prison*, 972 F.3d 310, 326 (3d Cir. 2020). Additionally, "a 'particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose.'" *Bistrian v.*

*Levi*, 696 F.3d 352, 373 (3d Cir. 2012) (quoting *Stevenson*, 495 F.3d at 68); *Steele v. Cicchi*, 855 F.3d 494, 504 (3d Cir. 2017).

Here, Plaintiff has sued the Warden Becky Scott for violating his constitutional rights. In addition to satisfying the elements of each claim, "a plaintiff must demonstrate a defendant's 'personal involvement in the alleged wrongs.'" *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). There are "two general ways in which a supervisor-defendant may be liable for unconstitutional acts undertaken by subordinates." *Barkes v. First Corr. Med., Inc.*, 766 F.3d 307, 316 (3d Cir. 2014), reversed on other grounds by *Taylor v. Barkes*, 575 U.S. 822 (2015). First, a supervisor may be liable if he or she "'with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm.'"[2] *Id.* (quoting *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004) (alteration in original)). "Second, a supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinate's unconstitutional conduct." *Id.*

Although Plaintiff has sued Becky Scott as the Warden of HCCC, he does not provide any facts showing that she personally participated or acquiesced in any violations of his constitutional

---

[2] "[T]o hold a supervisor liable. . . for their deficient policies. . . the plaintiff must identify a specific policy or practice that the supervisor failed to employ and show that: (1) the existing policy or practice created an unreasonable risk of [a constitutional] injury; (2) the supervisor was aware that the unreasonable risk was created; (3) the supervisor was indifferent to that risk; and (4) the injury resulted from the policy or practice." *Beers-Capitol v. Whetzel*, 256 F.3d 120, 133–34 (3d Cir. 2001) (citing *Sample v. Diecks*, 885 F.2d 1099, 1118 (3d Cir. 1989)). Deliberate indifference in the supervisory context may be demonstrated by "(i) showing that a supervisor failed to adequately respond to a pattern of past occurrences of injuries like the plaintiffs', or (ii) by showing that the risk of constitutionally cognizable harm was 'so great and so obvious that the risk and the failure of supervisory officials to respond will alone' support the finding that the two-part test is met." *Beers-Capitol*, 256 F.3d 136-37 (citing *Sample*, 885 F.2d at 1099).

rights. Plaintiff also fails to plead any facts showing that his constitutional rights were violated as a result of Scott's policies, or her failures to train, supervise, or discipline her staff. The Complaint contains no facts about Scott's personal involvement regarding Plaintiff's exposure to COVID-19, his conditions of confinement at HCCC, or the denial of medical care for his symptoms. *See Chavarriaga*, 806 F.3d at 223 (dismissing § 1983 claim where the plaintiff failed to establish the defendant's personal involvement in the acted alleged to violate the Constitution). The Court therefore dismisses without prejudice the § 1983 claims as to Becky Scott.[3]

Plaintiff also appears to name HCCC or the HCCC Medical Department as a defendant. A county jail is not a "person" subject to suit under § 1983, although the county itself may be a proper defendant. *See Abner v. Somerset Cnty. Jail*, No. 18-16911, 2019 WL 1904880, at *2 (D.N.J. Apr. 29, 2019) (citing *Barrett v. Essex Cty. Corr. Facility*, No. 15-595, 2015 WL 1808523, at *3 (D.N.J. Apr. 16, 2015)) (additional citations omitted). The Court dismisses with prejudice the claims against the HCCC and HCCC Medical Department, and liberally construes the Complaint to assert § 1983 claims against the County of Hudson.

The liability of a municipality under 42 U.S.C. § 1983 is governed by *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Municipalities may not be found vicariously liable under the doctrine of respondeat superior. *Ed. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997). Instead, a plaintiff must plead the elements of a *Monell* claim, which may proceed in two different ways. *See, e.g., Estate of Roman v. City of Newark*, 914 F.3d 789,

---

[3] The Court does not construe Plaintiff to allege § 1983 claims against individual corrections or medical staff at HCCC. Plaintiff mentions unnamed medical and corrections staff in his Complaint, but he does not provide sufficient facts to enable him to identify these John Does in discovery. If Plaintiff seeks to hold individual corrections or medical staff liable, he must plead facts sufficient to identify them later and show that those individuals acted with deliberate indifference to his health and safety or serious medical needs.

798–99 (3d Cir. 2019) (describing the two types of municipal liability).  A plaintiff may allege that an unconstitutional policy or custom of the municipality led to his or her injuries, *id.* at 798 (citing *Monell*, 436 U.S. at 694), or that his injuries were caused by a failure or inadequacy by the municipality that "reflects a deliberate or conscious choice," *see id.* (internal quotation marks omitted) (quoting *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 215 (3d Cir. 2001)); *see also Forrest v. Parry*, 930 F.3d 93, 105 (3d Cir. 2019) (explaining that the second type of *Monell* claim involves failures to train, supervise, or discipline).

Here, Plaintiff alleges that unnamed staff failed to protect him from COVID-19, held him in unsanitary conditions during quarantine, and denied him medical care for his COVID-19 symptoms.  Plaintiff, however, has not pleaded any facts to support a *Monell* claim against the County of Hudson, or its medical provider, and the Court dismisses without prejudice this claim for relief.

### III.   CONCLUSION

For all the reasons explained herein, the Court dismisses the Complaint for failure to state a claim for relief under 28 U.S.C. § 1915(e)(2)(B).  The Complaint is dismissed with prejudice as to the HCCC and the HCCC Medical Department and without prejudice as to Becky Scott and the County of Hudson.  The Court will permit Plaintiff to submit an Amended Complaint to the extent he can provide facts to cure the deficiencies in his claims for relief.  *See Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc.*, 482 F.3d 247, 251 (3d Cir. 2007) (holding that in civil rights cases, the Court must allow amendment, unless doing so would be inequitable or futile).  Because it is conceivable that Plaintiff can cure the deficiencies in the claims against Becky Scott and the County of Hudson,  Plaintiff may submit an Amended Complaint and a request to reopen this

matter within 45 days of the date of this Memorandum and Order.[4]  If Plaintiff does not submit an Amended Complaint within 45 days, the dismissal of this action will automatically convert to a dismissal with prejudice.  An appropriate Order follows.

March 10, 2025

  Hon. Madeline Cox Arleo, District Judge
  United States District Court

---

[4] Plaintiff should note that when an amended complaint is filed, it supersedes the original and renders it of no legal effect, unless the amended complaint specifically refers to or adopts the earlier pleading.  *See West Run Student Housing Associates, LLC v. Huntington National Bank*, 712 F.3d 165, 171 (3d Cir. 2013)(collecting cases).  To avoid confusion, the safer practice is to submit an amended complaint that is complete in itself.  *Id.*